IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

SALLIE THOMAS,                    *
                                  *
          Plaintiff,              *
                                  *
     v.                           *          CV 107-092
                                  *
RICHMOND COUNTY SCHOOL            *
DISTRICT, and DANA T.             *
BEDDEN, In his Official           *
Capacity as Superintendent        *
of the Richmond County            *
School District,                  *
                                  *
          Defendants.             *

---

**ORDER**

---

Plaintiff Sallie Thomas filed the captioned case asserting claims of race discrimination in employment under Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. §§ 2000e - 2000e-17, and 42 U.S.C. § 1981 ("§ 1981"). This matter comes before the Court pursuant to Richmond County School District and Superintendent Dana Bedden's ("Defendants") Motion for Summary Judgment under Federal Rule of Civil Procedure 56(c). (Doc. no. 13.) Upon consideration of the record evidence, the briefs submitted by counsel, and the relevant law, Defendants' motion is **GRANTED** for the reasons stated below.

1

## I.    BACKGROUND

Plaintiff, Sallie Thomas, a Caucasian, was hired by the Department of Transportation ("DOT") of the Richmond County School District as a bus driver on September 1, 1989. (Pl. Dep. at 10.) Plaintiff had previously worked as a "School Bus Driver Trainer" with the Ware County School District in Ware County, Georgia for three years. (Id. at 23.) Plaintiff has earned two certifications in driver training: the Georgia State Patrol Drivers Training Services, Basic Training-I and certification for the advanced training course. (Id. at 26.) Plaintiff concedes that seventeen years have elapsed since she received this certification, and she has not taken any steps to update her certification. (Id. at 24.)

While employed by Defendants, Plaintiff made several unsuccessful efforts at promotion.[1] In October 2004, Plaintiff wanted to apply for the position of full-time secretary. However, in Plaintiff's view, the position was not properly posted and thus, she was not given the opportunity to compete for the position. (Id. at 55-56.) Defendants have presented evidence that 69 individuals applied for this position. (Wiley Dep. at 85; Shinn Dep. at

---

[1] Plaintiff sought promotion in 2000, 2004, and 2006, but only the 2004 and 2006 attempts are relevant to her claims in this case.

40-41.) An African-American woman, Iris Rand, was selected to fill the position. (Wiley Dep. at 70-71; Shinn Dep. at 40.)

Plaintiff filed a charge of discrimination related to the posting of this position with the EEOC and Augusta/Richmond County Human Relations Commission on March 26, 2005. (Pl. Dep. at 14-15; Pl. Ex. 27.) Plaintiff contended that she was subjected to racial and gender discrimination because she had not seen the posting and was deprived of the opportunity to apply for the position. (Pl. Dep. at 41, 53-57.) Plaintiff argues that she never saw the position posted on the DOT bulletin board, only learning of the position opening once it had been filled. (Id. at 58.) Plaintiff admits, however, that she was not working during the summer in which the position would have been posted in the DOT office. (Id. at 55.) She also admits that her computer was not working throughout the summer, and she was unable to check for job postings. (Id. at 148-49.) Plaintiff has no knowledge that Defendants took action to deprive her specifically of the position. (Id.) Additionally, Plaintiff did not pursue the claim beyond filing the EEOC Charge. (Id. at 13.)

Next, in January 2006, Plaintiff applied for both the Driver Trainer Supervisor and the "Assistant Bus Driver

Trainer" ("Driver Trainer") positions.   There is no set procedure mandated by law that the Richmond County School Board must follow in selecting candidates for hiring or promotion.   The Board often employs a screening process to select the most qualified candidates.   (Ashe Dep. at 18-20; Sprey Dep. at 9.)   The Assistant Superintendent for Administrative Services, Dr. Missoura Ashe, is responsible for assembling a screening panel, which interviews and scores the candidates.   (Ashe Dep. at 59-61; Sprey Dep. at 37-38.)

In January 2006, a screening process was used to select candidates for the positions of Driver Trainer Supervisor and Driver Trainer.   (Ashe Dep. at 52-61.)   Ashe selected four employees to serve as the screening panel: James Thompson, Audrey Sprey, Michael Shinn, and Jimmy Wiley.   The panel was comprised of two supervisors from the DOT, Wiley and Shinn, and two representatives from the School Board's Central Office, Thompson and Sprey. (Id. 51-52.) The panel was racially balanced between Caucasians, Thompson and Shinn, and African-Americans, Sprey and Wiley. (Thompson Dep. at 5; Shinn Dep. at 4; Wiley Dep. at 9.)

The panel utilized a set of preselected interview questions in conducting the interviews.   (Pl. Ex. 1 at 84.) Each panel member asked three questions. (Id. at 84.) The

4

panel would then rate each candidate's response based on a rating form, on a scale from 1 (Low) to 5 (High). (Id. at 86-114.) The candidates were scored on the following criteria: oral communication; expression of ideas/thoughts; content specific responses to questions; experience which would contribute to success; interpersonal skills; ability to relate well to others and to work well with a variety of people. (Id.) In addition to their interview scores, each candidate was judged based on a packet submitted to the panel. This packet included the candidate's statement of interest and written recommendations. (Shinn Dep. at 14-15; Sprey Dep. at 16; Ashe Dep. at 30.) The panel did not consider any candidate's work history, demonstrated driving skill, or safety record. (Shinn Dep. at 14-20; Sprey Dep. at 18-19, 31; Thompson Dep. at 30-33; Wiley Dep. at 53.)

The scoring of the candidates was completed on an individual basis. (Ashe Dep. at 20-21; Sprey Dep. at 17; Wiley Dep. at 56-57.) After each interview, each member of the panel would individually score the candidate and turn the sheet over, not discussing their scores with the other panel members. (Wiley Dep. at 50-51.) At the conclusion of the interviews, each member made a written recommendation for the position of Driver Trainer and Driver Trainer Supervisor. (Pl. Ex. 1 at 114-117.)

Each panel member was in agreement that Janet Blue-Freeman should serve as the Driver Trainer Supervisor. (Id.) Blue-Freeman received the highest average interview score of 31.50. Blue-Freeman had six years of immediate prior experience, having served as the Driver Trainer since 2000. (Blue-Freeman Dep. at 5.) She had additional experience in educating and training the bus drivers of DOT, and handling supervisory and managerial responsibilities. (Id. at 14-18.)

The other candidates were ranked as follows: Judy Weber - 29.00; Edna Johnson - 27.25; Mattie Stewart - 27.26; Plaintiff - 26.50; Alvin Rouse - 22.50; Ronnie Reddy - 21.50. (Pl. Ex. 1 at 85.) The four African-American candidates were ranked higher than the three Caucasian candidates.

Three of the four panel members recommended Weber for the Driver Trainer position. (Id. at 114-117.) Thompson recommended Johnson. (Id. at 114.) Weber had extensive supervisory experience from her twenty-year career in the U.S. military. (Weber Dep. at 29-30.) Weber had worked as a senior bus driver for a number of years. (Id. at 7.) She also had the opportunity to work in the DOT front office, getting to know DOT management. (Johnson Dep. at 22; Wiley Dep. at 69-72.) On the other hand, Weber had a

poor driving record and had been disciplined several times. (Weber Dep. at 21-24; 25-27; 28-29.) However, the panel did not consider the driving record or disciplinary record of any of the candidates. (Ashe Dep. at 31; Sprey Dep. at 18, 27; Shinn Dep. at 19-20; Wiley Dep. at 51.)

Although the hiring panel ranked her fifth out of the seven candidates, Plaintiff argues she was the most qualified for the job because she was already certified as a Driver Trainer and she could have been recertified for this position with four hours of training, a test, and a practical demonstration. Weber, on the other hand, would have to complete a sixteen-hour class, a test, and a practical demonstration. (Pl. Dep. at 20-23; 32.)

Plaintiff further contends that the successful candidates were pre-selected; arguing that each selected candidate was chosen to work in the front office, giving these candidates an opportunity to become acquainted with the management that would make decisions about promotions. Further, in the past three years, Plaintiff contends that the successful candidate for every full-time position filled at the DOT has been African-American. Defendants dispute this claim, pointing out instances where Caucasians have been hired for full-time positions.

Plaintiff filed a complaint, seeking damages under Title VII, 42 U.S.C. § 2000e-2(a). She alleges that she was racially discriminated against when she was denied the promotion to Driver Trainer in 2006 because she was not African-American. In the alternative, Plaintiff alleges that Defendants chose not to give her that position in retaliation for filing an EEOC Charge against Defendants in May, 2005, in violation of Title VII's retaliation provision, 42 U.S.C. § 2000e-3(a). Plaintiff also asserts a § 1981 claim of racial discrimination and retaliation against Defendants since both are state actors.[2]

## II.  **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there are no genuine issues of fact and the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56(c). The purpose of the summary judgment rule is to dispose of unsupported claims or defenses which, as a matter of law, raise no genuine issues of material fact suitable for trial. Celotex Corp. v. Catrett, 477 U.S. 317,

---

[2] Plaintiff's original complaint included a cause of action under 42 U.S.C. § 1983 ("§ 1983"). However Plaintiff omitted the § 1983 claim in her amended complaint, so the Court does not address it. Further, Plaintiff also sought punitive damages as well as a claim against Superintendent Dana Bedden in his official capacity. At the hearing on February 6, 2008, both parties agreed to dismiss these claims. Accordingly, Defendant Bedden is dismissed from the case.

322-23 (1986). In considering a motion for summary judgment, all facts and reasonable inferences are to be construed in favor of the non-moving party. Hogan v. Allstate Ins. Co., 361 F.3d 621, 625 (11th Cir. 2004). The party opposed to the summary judgment motion, however, "may not rest upon the mere allegations or denials in its pleadings. Rather, its responses . . . must set forth specific facts showing that there is a genuine issue for trial." Walker v. Darby, 911 F.2d 1573, 1576-77 (11th Cir. 1990). Summary judgment is not appropriate "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In response to Defendant's motion for summary judgment, the Clerk issued a Griffith[3] notice on December 28, 2007. (Doc. no. 15.)

## III. DISCUSSION

### A. Plaintiff's Disparate Treatment Claim

#### i. McDonnell Douglas Framework

The Court first considers Plaintiff's discrimination claim under Title VII and § 1981. Title VII makes it unlawful for an employer to discriminate against an

---

[3] Griffith v. Wainwright, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam).

individual because of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1).[4]

Disparate treatment claims, such as this one, require proof of discriminatory intent through either direct or circumstantial evidence. Denney v. City of Albany, 247 F.3d 1172, 1182-83 (11th Cir. 2001). When a plaintiff can only present circumstantial evidence of discrimination, a district court must utilize the McDonnell Douglas burden shifting framework to analyze the claim. Weston-Brown v. Bank of Am. Corp, 167 Fed. Appx. 76, 79 (11th Cir. 2006); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

In McDonnell Douglas, the United States Supreme Court established "the allocation of the burden of production and the order for the presentation of proof" in discrimination cases. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 502 (1993). The McDonnell Douglas framework encompasses both a prima facie case and a burden-shifting scheme. This method of proof seeks to narrow a plaintiff's case to its most basic elements. Tex. Dep't of Cmty. Affairs v. Burdine,

---

[4] Plaintiff asserts both a Title VII claim and a § 1981 claim, but does not assert a § 1983 claim. Defendants contend that in the Eleventh Circuit, § 1983 contains the sole cause of action against state actors for violations of § 1981. See Butts v. County of Volusia, 222 F.3d 891, 894 (11th Cir. 2000). In Defendants' view, Plaintiff cannot bring a § 1981 claim absent a § 1983 claim. The Court need not address this point because Title VII discrimination claims share the same requirements of proof and analytical framework as § 1981 claims, see Taylor v. On Tap Unlimited, Inc., 282 Fed. Appx. 801, 802 (11th Cir. 2008), and, as discussed below, both the Title VII and § 1981 claims fail as a matter of law.

450 U.S. 248, 253 (1981). The plaintiff must first establish a prima facie case of discrimination. If the plaintiff establishes a prima facie case, a feather-weight burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action in question. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). If the defendant carries its burden, the plaintiff retains the burden of persuasion to show that the employer's proffered explanation was not the real reason for the employment change, but was instead a pretext for discrimination. Tex. Dep't of Cmty. Affairs, 450 U.S. at 256. The plaintiff, however, at all times carries the ultimate burden of proving by the preponderance of the evidence that the challenged employment decision was motivated by discriminatory animus. See id. at 252-53.

In this case, Defendants do not challenge that Plaintiff has established a prima facie case as to the selection of Weber to fill the position of Driver Trainer. (Defs. Br. at 15.) Thus, the burden has shifted to Defendants "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." McDonnell Douglas Corp., 411 U.S. at 802; Tex. Dep't of Cmty. Affairs, 450 U.S. at 253. Defendants' burden at this stage is "exceedingly light." Vessels v. Atlanta Indep.

Sch. Sys., 408 F.3d 763, 770 (11th Cir. 2005) (quoting Perryman v. Johnson Prod. Co., 698 F.2d 1138, 1141 (11th Cir. 1983)). In fact, the employer's burden is one of production, not of persuasion. St. Mary's Honor Center, 509 U.S. at 509.

Here, Defendants have met their burden of production. Defendants have explained that Plaintiff was not selected for the Driver Trainer position because the other candidates performed better in the screening process. Plaintiff, in fact, ranked fifth among seven candidates for promotion. The panel chose Weber over Plaintiff primarily based on Weber's significant military and supervisory experience, a qualification deemed crucial for the position. Plaintiff agrees that Defendants have met their burden by producing admissible evidence articulating legitimate, non-discriminatory reasons for the promotion of Weber. (Pl. Br. at 13.)

Now, Plaintiff must show by a preponderance of evidence that Defendants' proffered reasons were pretextual. To prove pretext at the summary judgment stage, Plaintiff must come forward with evidence sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were pretextual. Holifield, 115 F.3d at 1564-66; Combs v. Plantation Patterns, 106 F.3d

12

1519, 1528 (11th Cir. 1997). Plaintiff may show pretext by either "persuading the court that a discriminatory reason more than likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Tex. Dep't of Cmty. Affairs, 450 U.S. at 256.

This burden is a stringent one; Plaintiff may not simply offer conclusory allegations to prove pretext. Mayfield v. Patterson Pump Co., 101 F.3d 1371, 1376-77 (11th Cir. 1996). The Eleventh Circuit has instructed plaintiffs that they must "meet the proffered reason 'head on and rebut it.'" Greer v. Birmingham Beverage Co., Inc., No. 08-10815, 2008 WL 4061161, at * 2 (11th Cir. September 3, 2008) (quoting Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000)). With this framework in mind, the Court now considers Plaintiff's proffered evidence of pretext.

## ii. Plaintiff's Evidence of Pretext

Pretext evidence is that which demonstrates "weaknesses, implausibilities, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could find them unworthy of credence." Combs, 106 F.3d at 1538. Plaintiff's pretext evidence consists of: (1) Plaintiff's

superior qualifications to Weber's; (2) the open positions within the DOT have gone to African-Americans since 2000; (3) evidence of pre-selection of African-American candidates; (4) the higher ranking of all African-American candidates and the subjective criteria used to score the candidates; and (5) Johnson's opinion that one panel member harbored a racial bias against whites. The Court will address each of these in turn.

## 1. Plaintiff's Qualifications

Plaintiff first argues that her superior qualifications are evidence of pretext. The Eleventh Circuit has made it clear that Title VII does not require federal courts to act as a "super-personnel department" which reexamines an entity's business decisions. Denney, 247 F.3d at 1188. A employer is not required to hire the most qualified person for any particular position. Id. Indeed, the Circuit requires a "strong showing in disparity of qualifications" in order to show pretext. Id. at 1187. Plaintiff cannot show pretext by simply proving that she was better qualified than the individual who received the promotion over her. Id. Instead, the disparities in qualifications must be "so apparent as virtually to jump off the page and slap you in the face." Id. (citing Lee v. GTE Fla., Inc., 226 F.3d 1249, 1253-54 (11th Cir. 2000)).

14

Here, this Court is not convinced that Plaintiff is more qualified than Weber, much less that she is so much better qualified that the disparity "jumps off the page." Plaintiff argues that she was more qualified because she had served in the position of Driver Trainer when employed by Ware County School District in 1987, that she had a better performance record in her job as a driver, a better driving record, no criminal record reflecting violence, and no altercations with fellow drivers.

First, both Plaintiff and Defendants agree the selection panel did not consider the candidates' driving records or disciplinary records. Thus, even if Plaintiff was better qualified in these areas, this criteria was not used in evaluating the drivers.

Plaintiff appears to argue that the driving record and disciplinary records should have been considered in the selection process. Perhaps it would have been prudent of the panel to consider these factors. However, federal courts are not in the position to adjudge whether an employment decision is "prudent" or "fair." Chapman v. AI Transport, 229 F.3d 1012, 1030 (11th Cir. 2000); see also Rowell v. Bell South Corp., 433 F.3d 794, 798-99 (11th Cir. 2005) (refusing to second guess the business decision of an

employer, though the plaintiff argued that the employer used improper criteria in selecting candidates).

Second, Plaintiff's experience as a Driver Trainer almost two decades ago does not make her better qualified than Weber for this position. Indeed, Plaintiff admits that a seventeen-year period elapsed between her certification with Ware County and her application with Defendants. Further, Plaintiff admits that she did nothing to update her certification during this time period. Such experience seventeen years ago is not proof that "jumps off the page."

Further, it may be that Weber was actually better qualified for the position, given her extensive military experience. Of great importance to the screening panel was supervisory and managerial experience. (Wiley Dep. at 55.) Weber had extensive supervisory experience based upon her twenty-year career in the U.S. military. Weber had served as a sergeant in the U.S. Army and had supervised 20-30 troops; a position requiring extensive responsibility. She had further received military training and instruction on how to teach and instruct others. (Id. at 29-30.) In fact, the first question posed by the screening panel asked each candidate to describe their supervisory experience. (Pl. Ex. at 84.) Plaintiff, on the other hand, had very

little supervisory experience, noting her experience of supervising staff at a convenience store in 1989. (Pl. Dep. at 82-83, 92-93.) Understandably, the panel members were impressed with Weber's military experience. (Shinn Dep. at 38; Wiley Dep. at 83-84.)

Given these facts, the Court is unconvinced that Plaintiff's experience almost 20 years ago makes her any better qualified than Weber. The Eleventh Circuit has explained that "when two candidates are equally qualified in that they both possess the objective qualifications for the position, and neither is clearly better qualified, it is within the employer's discretion to choose among them as long as the decision is not based on unlawful criteria." Lee v. GTE Fla. Inc, 226 F.3d 1249, 1254 (11th Cir. 2000). Thus, Plaintiff's evidence of supposed better qualifications is insufficient to rebut Defendant's legitimate non-discriminatory reasons or to show pretext.

### 2. Positions filled at the DOT by African-Americans

Plaintiff next presents evidence that since 2000, four full-time positions at the DOT have been filled by African-American candidates, including the dispatcher, the secretary, and two driver trainer positions. (Plaintiff's Aff. at ¶ 5.; Wiley Dep. at 86.) In Plaintiff's mind, the

fact that so many African-American candidates have been chosen over Caucasian candidates reveals a discriminatory bias against Caucasian candidates.

If these were the only positions filled since 2000, Plaintiff's evidence might be more compelling. However, the evidence shows that other positions have been filled with Caucasian candidates within the last five or six years including the DOT bookkeeper and the data entry clerk. (Wiley Dep. at 86.) Further, both African-American and Caucasian applicants applied for both of those positions. (Id. at 86.) The DOT has also hired a white mechanic and white bus driver. (Shinn Dep. at 37.) Plaintiff does not rebut this evidence. The entire picture demonstrates a diverse group of employees. Accordingly, Plaintiff's focus on part of the picture is unavailing and does not demonstrate pretext.

### 3. Evidence of Pre-Selection

Plaintiff next argues that each successful African-American candidate was pre-selected and that the panel selection process was nothing but a ruse. Specifically, Plaintiff points out that both Weber and Blue-Freeman, as well as the people who were awarded the dispatcher and full-time secretary positions, had the opportunity to work in the front office with management before being promoted.

(Johnson Dep. at 23; Wiley Dep. at 69-72.)   Each person afforded this opportunity was African-American.   Further, Plaintiff notes that Weber was performing Driver Trainer tasks before the interviews even took place.   (Pl. Dep. at 134-35.)   Plaintiff also points to the fact that Blue-Freeman told Johnson that she needn't bother applying for the position of Driver Trainer Supervisor because Blue-Freeman already "had it." (Johnson Dep. at 35.)

The Eleventh Circuit has explained that a defendant may make an employment decision for a "good reason, a bad reason . . . or no reason at all as long as its action is not for a [racially] discriminatory reason."  See Chapman, 229 F.3d at 1030 (quoting Nix v. WLCY Radio/Rahall Commc'n, 738 F.2d 1181, 1187 (11th Cir. 1984)).   As explained previously, this Court will not act as a super-personnel department   which   reexamines   an   employer's   business decisions. Id. at 1030.

Even if it were true that both Weber and Blue-Freeman were pre-selected, Plaintiff must prove that this pre-selection was made for a discriminatory reason.   If Weber and Blue-Freeman were pre-selected, Plaintiff still cannot sustain a Title VII claim as long as the pre-selection was not racially discriminatory.   Indeed, Weber and Blue-Freeman may have been chosen for the positions simply

because they had the additional experience of working in the front office. Plaintiff has not provided any competent evidence that Blue-Freeman and Weber were pre-selected because they were African-American. Thus, Plaintiff's limited evidence of pre-selection is not evidence of discrimination, nor is it competent evidence of pretext.

### 4. High Scoring of African-American Candidates and Use of Subjective Factors

Plaintiff argues that the criteria used to score the candidates was "vague and subjective" and puts forth evidence that all African-American candidates were ranked higher than all the Caucasian candidates. (Pl. Br. at 5.)

The use of subjective factors in making hiring or promotion decisions does not "raise a red flag" suggesting an intent to facilitate discrimination. Cooley v. Great S. Wood Preserving, 138 Fed. Appx. 149, 160 (11th Cir. 2005) (quoting Wilson v. B/E Aerospace, Inc., 376, F.3d 1079, 1088 (11th Cir. 2004)). The Supreme Court has recognized that personal qualities factor heavily into employment decisions concerning supervisory positions. Watson v. Fort Worth Bank & Trust, 487 U.S. 977, 991 (1988). Traits such as "common sense, good judgment, originality, ambition, loyalty and tact" must often be assessed in a subjective fashion. Id.

The criteria utilized by the screening panel may be a "study in vagueness and ambiguity." (Pl. Br. at 5.) Plaintiff has not shown that these factors were put in place to facilitate discrimination. The use of subjective factors alone is not evidence of racial discrimination and is insufficient to allow the Plaintiff to proceed past summary judgment.

Plaintiff's strongest evidence of pretext is the fact that the four African-American female candidates ranked higher than the Caucasian candidates in the scoring averages. Indeed, the African-American candidates, Blue-Freeman, Weber, Johnson, and Stewart were ranked higher than the Caucasian candidates. At first blush, this type of evidence appears to be the kind of "inconsistency" or "implausibility" that the Eleventh Circuit requires a plaintiff to present as evidence of pretext.

However, Plaintiff admits that second to her, Blue-Freeman would probably be the most qualified, followed by Johnson, then Weber. (Pl. Dep. at 107-09.) It is significant that the top three average scores from the panel were Blue-Freeman - 31.50, Weber - 29.00 and Johnson - 27.25. Removing Plaintiff's apparent self interest, Plaintiff identifies the same top three African-American

candidates as most qualified, reaching the same decision as the screening panel.

Rouse, who ranked fifth in the scoring averages, found that Johnson would be tied for first in a list of most qualified candidates. (Rouse Dep. at 15.) In his opinion, Weber was second most qualified, due to her military background, leadership potential, and knowledge of computers. (Id. at 17.) Johnson, too, would have placed Blue-Freeman and Stewart in the top four. (Johnson Dep. at 34-35.) Johnson would have placed Weber at five, primarily because of her attitude. (Id. at 34.) However, Johnson noted that she did not know anything about Weber's skills and qualifications because she had never worked with her. (Id.)

Thus, the opinions of these candidates reveal that is it not "implausible" nor "inconsistent" that the four African-American candidates would be ranked higher than the Caucasian candidates. The testimonies of these candidates do not show inconsistencies in the Defendants' proffered reasons for its decision, but shed light on the fact that these four African-American candidates were qualified and deserved the high scores they received.

### 5. *Johnson's Opinion*

Plaintiff next relies on the testimony of Johnson, an African-American employee, who stated that she believed that the DOT's manager, Michael Shinn, discriminated against whites in favor of blacks. Johnson testified that Shinn favored African Americans over Caucasian employees because "they snitch." (Johnson Dep. at 38-39.) However, she also stated that she "wasn't sure" whether Shinn had such a bias. (Id.)

The Eleventh Circuit has made it clear that statements by non-decision makers or statements unrelated to the decisional process do not demonstrate discriminatory intent. Mitchell v. USBI Co., 186 F.3d 1352, 1354 (11th Cir. 1999)(applying the McDonnell Douglas burden-shifting framework to an age discrimination suit). The personal opinion of Johnson, who is not in any way involved in the decisional process, is not competent evidence of pretext.

Further, even if the Court were to consider Johnson's opinion, there is no evidence that any potential racial bias of Shinn was imputed to the other panel members. Plaintiff has failed to show that a majority of the panel was motivated by racial bias. See Rolle v. Worth County Sch. Dist., 128 Fed. Appx. 731, 732 (11th Cir. 2005) (granting summary judgment because an improper motive of

one board member does not impart discrimination on the entire board); Matthews v. Columbia County, 294 F.3d 1294, 1297 (11th Cir. 2002). Thus, Johnson's opinion is insufficient to show pretext.

Plaintiff has failed to present competent evidence to allow a reasonable factfinder to conclude that the reasons provided by Defendants in selecting Weber were pretextual. Based upon the foregoing, Plaintiff's race discrimination claim does not survive summary judgment.

### B. Plaintiff's Retaliation Claim

The Court next addresses Plaintiff's retaliation claim. Plaintiff claims that she did not receive the promotion to Driver Trainer because the screening panel was retaliating against her for filing an EEOC complaint of discrimination in March of 2005, in violation of Title VII's retaliation provision. See 42 U.S.C. § 2000e-3(a).[5]

Title VII protects two kinds of conduct from retaliation: opposition to unlawful employment practices and participation in an investigation, proceeding or hearing under Title VII. The participation clause of Title VII provides that a plaintiff is protected against retaliation for making a charge, testifying, assisting, or

---

[5] The Court notes that Plaintiff's retaliation Claim under § 1981 is analyzed under the same framework as Title VII. Butler v. Alabama Dept. of Transp., 536 F.3d 1209, 1215 (11th Cir. 2008).

participating in any manner in an investigation, proceeding, or hearing under this subchapter. 42 U.S.C. § 2000(e)-3(a). On the other hand, a plaintiff may also bring a retaliation claim under the opposition clause of Title VII. In that instance, the plaintiff must show that she has opposed any practice made an unlawful employment practice by the subchapter. Plaintiff's claim clearly falls under the participation clause of Title VII because of her contention that she was retaliated against for filing an EEOC charge.[6]

To establish a prima facie case of retaliation, a plaintiff must demonstrate: (1) that she engaged in statutorily-protected activity; (2) that she suffered an adverse action; and (3) that there is a causal relationship between the protected activity and the adverse action.

---

[6] Under Title VII's opposition clause, a Plaintiff engages in "statutorily protected activity" for which she cannot be retaliated against if she can demonstrate a "good faith, reasonable belief" that the employer was engaged in unlawful employment practices, regardless of whether the employer's conduct was actually lawful. Harper v. Blockbuster Entm't Corp., 139 F.3d 1385, 1388 (11th Cir. 1998). Both parties devote a substantial section of their briefs to arguing whether plaintiff actually had a good faith, reasonable belief that Defendants' conduct in improperly posting the position was unlawful. However, it is an unsettled question in the Eleventh Circuit whether the "good faith, reasonable belief" requirement must be proven when a plaintiff premises her claim upon the participation prong of Title VII, as Plaintiff has done here. See Wideman v. WalMart-Stores, Inc., 141 F.3d 1453, 1455 (11th Cir. 1998) (declining to decide whether the participation clause is conditioned by a good faith, reasonable basis belief requirement). The Court will give Plaintiff the benefit of the doubt, and assume that she had a good faith, reasonable belief that the Defendant had unlawfully discriminated against her when it posted the secretary position. Nevertheless, Plaintiff is unable to establish the elements of the prima facie case.

_Adams v. Cobb County Sch. Dist._, 242 Fed. Appx. 616, 619 (11th Cir. 2007). It is undisputed here that filing a charge of discrimination with the EEOC is a statutorily protected activity. _Id._ at 621. It is further undisputed that being turned down for a promotion is an adverse action. _Id._ Plaintiff has failed to meet her burden, however, because she is unable to establish a causal connection between her protected activity and the adverse employment action.

There are two problems with Plaintiff's prima facie case. First, in order to prove a causal connection, Plaintiff would also have to show that the decision-maker had knowledge that she engaged in statutorily protected conduct. _Maniccia v. Brown_, 171 F.3d 1364, 1369 (11th Cir. 1999); _Bowen v. Jameson Hospitality, LLC._, 214 F.Supp.2d 1372, 1380 (S.D.G.A. 2002) (noting that the employer knowledge element is part of the causation element, not a separate element to be proven).

Moreover, the knowledge of one panel member cannot simply be imparted to the other panel members. _See Rolle_, 128 Fed. Appx. at 732; _Matthews_, 294 F.3d at 1297. Because this decision was made by majority vote, it is simply not enough for Plaintiff to demonstrate that only one or two

panel members had knowledge of her EEOC charge to meet her prima facie case.

In this case, the screening panel served as the decision-maker for Defendants. Plaintiff has proffered evidence that one panel member, Shinn, knew that she had filed an EEOC charge. However, the panel was made up of four members. The other three members testified that he or she had no knowledge of Plaintiff's EEOC claim. (Wiley Dep. at 65, Sprey Dep. at 33, Thompson Dep. at 35.) Defendants correctly point out that Plaintiff has presented no evidence that Shinn controlled the other members of the panel. Moreover, each panel member has testified that they did not discuss the candidates, and the scoring was done on an individual basis.

Even if Plaintiff was able to show that a majority of panel members had knowledge, knowledge alone is not sufficient to prove a causal connection. A plaintiff may prove the causation element by showing a close temporal proximity between the statutorily protected activity and the adverse employment action. Thomas v. Cooper Lighting, 506 F.3d 1361, 1364 (11th Cir. 2007). However, if the plaintiff's sole evidence of retaliation is temporal proximity, the proximity must be "very close." Id (citing Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273

(2001)). If there is a substantial delay between the protected activity and the adverse action, the claim fails as a matter of law. Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004)).

Plaintiff relies almost solely on a temporal connection to prove causation, and a rather long span of time at that. Plaintiff filed her EEOC charge in May, 2005. The screening panel for the Driver Trainer and Driver Trainer Supervisor positions took place on June 28, 2006. This is a thirteen-month span of time. The Eleventh Circuit has found periods as short as three and four months to be an insufficient temporal connection to prove causation. See Adams, 242 Fed. Appx. at 621 (citing Higdon v. Jackson, 393 F.3d 1211, 1220 (11th Cir. 2004)); Thomas, 506 F.3d at 1364 (affirming the district court's grant of summary judgment because a three month period, without more, did not prove causation). Thus, Plaintiff's thirteen-month period is simply insufficient, standing alone, to demonstrate a causal connection.

Plaintiff argues that she has shown more than just a temporal connection because she has shown that the Driver Trainer position was the first position that was filled at the DOT, and thus, was the first opportunity Defendants had to retaliate against her. (Pl. Br. at 12.) This argument

is unpersuasive. If Defendants intended to retaliate against her for exercising her statutorily-protected rights, there were certainly many other avenues that could have been taken. Defendants could have fired her, demoted her, changed her bus route, or any other variety of adverse actions. Plaintiff has failed to prove a causal connection, and thus her retaliation claim does not survive summary judgment.

## IV. CONCLUSION

Upon the foregoing, the Court finds that Defendants are entitled to summary judgment. Accordingly, Defendants' Motion for Summary Judgment (Doc. no. 13) is **GRANTED**. The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** in favor of Defendants. The Clerk shall terminate all deadlines and motions, and **CLOSE** the case.

**ORDER ENTERED** at Augusta, Georgia, this _6th_ day of November, 2008.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE